IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**UNITED STATES OF AMERICA**

vs.                      **CRIMINAL ACTION No.: 3:14-CR-128-HTW-FKB-1**

**JUSTIN D. HURST**

<u>**ORDER DENYING COMPASSIONATE RELEASE**</u>

BEFORE THIS COURT is the defendant's Motion for Compassionate Release **[Docket no. 23]**. Defendant, by his motion, asks this court for release from confinement based on concerns arising from the Coronavirus Pandemic (Covid -19). The United States of America opposes such motion, saying that defendant has failed to meet his burden of proof and that this defendant has not exhausted administrative remedies. This court has reviewed the submissions of the parties and finds as follows.

**I. FACTUAL BASIS**

On October 16, 2014, pursuant to a Plea Agreement with the United States, defendant Hurst pled guilty to a Criminal Information, charging him in Counts 1 and 2 with violating 18 U.S.C. §1952(a)(3). Those charges arose from defendant's using and causing to be used a facility in interstate commerce, to wit: the Internet, with the intent to promote, manage, establish, carry on and facilitate the unlawful activity of prostitution by posting advertisements on a website for commercial sex acts.

On January 26, 2015, this Court sentenced defendant Hurst to 51 months as to each count, to run concurrently, for a total sentence of 51 months of imprisonment. At that time, defendant Hurst had charges pending against him in Madison County, Mississippi with a projected trial date

of April 13, 2015. Defendant Hurst was convicted and sentenced in state court after receiving his federal sentence. Defendant Hurst asserts in his motion for compassionate release that he was sentenced in state court to eight (8) years for possession of cocaine and five (5) years for conspiracy. Defendant Hurst's state convictions ran consecutively to each other for a total of thirteen (13) years to serve.

Defendant Hurst was released from his state convictions on or about April 21, 2020. Thereafter, Hurst was taken into federal custody and began serving his federal sentence of 51 months on April 21, 2020.

Hurst is currently serving his federal sentence at the Federal Correction Institution Beaumont, in Beaumont Texas. Defendant has a projected statutory release date of December 4, 2023.

The United States contends that Hurst has not properly exhausted his administrative remedies as to his Motion for Compassionate Release and has not met his burden of proof that compelling and extraordinary reasons exist.  Additionally, says the Government, Hurst has not shown that he would not be a danger to the community if released. [Docket no. 25].

## BOP and the COVID-19 Pandemic

COVID-19, an extremely contagious illness, has caused many deaths in the United States in a short period of time and has resulted in massive disruption to the American society and economy. In response to the pandemic, BOP has taken significant measures to protect the health of the inmates in its charge.

BOP has explained that "maintaining safety and security of [BOP] institutions is [BOP's] highest priority." BOP, Updates to BOP COVID-19 Action Plan: Inmate Movement (3/19/2020). BOP has had a Pandemic Influenza Plan in place since 2012. That protocol is lengthy and detailed,

establishing a six-phase framework requiring BOP facilities to begin preparations when there is first a "[s]uspected human outbreak overseas." The plan addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates.

Consistent with that plan, BOP began planning for potential coronavirus transmissions in January of 2020. At that time, BOP established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control. BOP also reviewed guidance from the World Health Organization.

On March 13, 2020, BOP began to modify its operations, in accordance with its Coronavirus (COVID-19) Action Plan (hereinafter referred to as "Action Plan"), to minimize the risk of COVID-19 transmission into and inside its facilities. Since that time, as events require, BOP has repeatedly revised the Action Plan to address the crisis.

Beginning April 1, 2020, BOP implemented Phase Five of the Action Plan, which currently governs operations. The current, modified operations plan requires that all inmates in every BOP institution be secured in their assigned cells/quarters for a period of at least fourteen (14) days, in order to stop any spread of the disease. Only limited group gathering is afforded, with attention to social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access. BOP further has severely limited the movement of inmates and detainees among its facilities. Though there will be exceptions for medical treatment and similar exigencies, this step, as well, will limit transmissions of the disease. Likewise, all official staff travel has been cancelled, as has most staff training.

All staff and inmates have been and will continue to be issued face masks and strongly encouraged to wear an appropriate face covering in public areas when social distancing cannot be achieved.

Every newly admitted inmate is screened for COVID-19 exposure risk factors and symptoms. Asymptomatic inmates with risk of exposure are placed in quarantine for a minimum of fourteen (14) days, or until cleared by medical staff. Symptomatic inmates are placed in isolation until they test negative for COVID-19, or are cleared by medical staff as meeting CDC criteria for release from isolation. In addition, in areas with sustained community transmission, all facility staff are screened for symptoms. Staff registering a temperature of 100.4 degrees Fahrenheit or higher are barred from the facility on that basis alone. A staff member with a stuffy or runny nose can be placed on leave by a medical officer.

Contractor access to BOP facilities is restricted to only those performing essential services (e.g., medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended, absent authorization by the Deputy Director of BOP. Any contractor or volunteer who requires access will be screened for symptoms and risk factors.

BOP stopped social and legal visits on March 13, 2020, and those visits remain suspended, to limit the number of people entering the facility and interacting with inmates. In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month. Tours of facilities are also suspended. Legal visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screening protocols for prison staff.

In addition, in an effort to relieve the strain on BOP facilities and assist inmates who are most vulnerable to the disease and pose the least threat to the community, BOP is exercising greater authority to designate inmates for home confinement. On March 26, 2020, the Attorney General directed the Director of the Bureau of Prisons, upon considering the totality of the circumstances

concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, see 18 U.S.C. § 3624(c)(2)[1], and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g)[2].

---

[1] (c) Prerelease custody.—[…]

    (2) Home confinement authority.--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.

18 U.S.C.A. § 3624 (West)

[2] (g) Elderly and family reunification for certain nonviolent offenders pilot program

    (1) Program authorized

        (A) In general

            The Attorney General shall conduct a pilot program to determine the effectiveness of removing eligible elderly offenders and eligible terminally ill offenders from Bureau of Prisons facilities and placing such offenders on home detention until the expiration of the prison term to which the offender was sentenced.

        (B) Placement in home detention

            In carrying out a pilot program as described in subparagraph (A), the Attorney General may release some or all eligible elderly offenders and eligible terminally ill offenders from Bureau of Prisons facilities to home detention, upon written request from either the Bureau of Prisons or an eligible elderly offender or eligible terminally ill offender.

        (C) Waiver

            The Attorney General is authorized to waive the requirements of section 3624 of Title 18 as necessary to provide for the release of some or all eligible elderly offenders and eligible terminally ill offenders from Bureau of Prisons facilities to home detention for the purposes of the pilot program under this subsection.

    (2) Violation of terms of home detention

        A violation by an eligible elderly offender or eligible terminally ill offender of the terms of home detention (including the commission of another Federal, State, or local crime) shall result in the removal of that offender from home detention and the return of that offender to the designated Bureau of Prisons institution in which that offender was imprisoned immediately before placement on home detention under paragraph (1), or to another appropriate Bureau of Prisons institution, as determined by the Bureau of Prisons.

    (3) Scope of pilot program

        A pilot program under paragraph (1) shall be conducted through Bureau of Prisons facilities designated by the Attorney General as appropriate for the pilot program and shall be carried out during fiscal years 2019 through 2023.

    (4) Implementation and evaluation

        The Attorney General shall monitor and evaluate each eligible elderly offender or eligible terminally ill offender placed on home detention under this section, and shall report to Congress concerning the experience with the program at the end of the period described in paragraph (3). The

>> Administrative Office of the United States Courts and the United States probation offices shall provide such assistance and carry out such functions as the Attorney General may request in monitoring, supervising, providing services to, and evaluating eligible elderly offenders and eligible terminally ill offenders released to home detention under this section.
>
> (5) Definitions
>
>> In this section:
>>
>> (A) Eligible elderly offender
>>
>>> The term "eligible elderly offender" means an offender in the custody of the Bureau of Prisons-
>>> (i) who is not less than 60 years of age;
>>>
>>> (ii) who is serving a term of imprisonment that is not life imprisonment based on conviction for an offense or offenses that do not include any crime of violence (as defined in section 16 of Title 18), sex offense (as defined in section 20911(5) of this title), offense described in section 2332b(g)(5)(B) of Title 18, or offense under chapter 37 of Title 18, and has served 2/3 of the term of imprisonment to which the offender was sentenced;
>>>
>>> (iii) who has not been convicted in the past of any Federal or State crime of violence, sex offense, or other offense described in clause (ii);
>>>
>>> (iv) who has not been determined by the Bureau of Prisons, on the basis of information the Bureau uses to make custody classifications, and in the sole discretion of the Bureau, to have a history of violence, or of engaging in conduct constituting a sex offense or other offense described in clause (ii);
>>>
>>> (v) who has not escaped, or attempted to escape, from a Bureau of Prisons institution;
>>>
>>> (vi) with respect to whom the Bureau of Prisons has determined that release to home detention under this section will result in a substantial net reduction of costs to the Federal Government; and
>>>
>>> (vii) who has been determined by the Bureau of Prisons to be at no substantial risk of engaging in criminal conduct or of endangering any person or the public if released to home detention.
>>
>> (B) Home detention
>>
>> The term "home detention" has the same meaning given the term in the Federal Sentencing Guidelines as of April 9, 2008, and includes detention in a nursing home or other residential long-term care facility.
>>
>> (C) Term of imprisonment
>>
>> The term "term of imprisonment" includes multiple terms of imprisonment ordered to run consecutively or concurrently, which shall be treated as a single, aggregate term of imprisonment for purposes of this section.
>>
>> (D) Eligible terminally ill offender
>>
>> The term "eligible terminally ill offender" means an offender in the custody of the Bureau of Prisons who--
>>
>>> (i) is serving a term of imprisonment based on conviction for an offense or offenses that do not include any crime of violence (as defined in section 16(a) of Title 18), sex offense (as defined in section 20911(5) of this title), offense described in section 2332b(g)(5)(B) of Title 18, or offense under chapter 37 of Title 18;
>>>
>>> (ii) satisfies the criteria specified in clauses (iii) through (vii) of subparagraph (A); and
>>>
>>> (iii) has been determined by a medical doctor approved by the Bureau of Prisons to be--
>>>
>>>> (I) in need of care at a nursing home, intermediate care facility, or assisted living facility, as those terms are defined in section 1715w of Title 12; or
>>>>
>>>> (II) diagnosed with a terminal illness.

34 U.S.C. § 60541(g).

Congress has also acted to enhance BOP's flexibility to respond to the pandemic. Under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), enacted on March 27, 2020, BOP may "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" if the Attorney General finds that emergency conditions will materially affect the functioning of BOP. Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621 note). On April 3, 2020, the Attorney General gave the Director of BOP the authority to exercise this discretion, beginning at the facilities that thus far have seen the greatest incidence of coronavirus transmission. As of July 29, 2021, BOP has transferred a total of 28,982 inmates to home confinement.

Taken together, all of these measures are designed to mitigate sharply the risks of COVID-19 transmission in a BOP institution. BOP has pledged to continue monitoring the pandemic and to adjust its practices as necessary to maintain the safety of prison staff and inmates, while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

## II. ANALYSIS

Hurst filed his motion, citing Title 18 U.S.C. § 3582(c)(1)(A) for authority. Section 3582, commonly referred to as the First Step Act, provides:

> (c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that--
> > (1) in any case—
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

7

>> (i) extraordinary and compelling reasons warrant such a reduction; or
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; […]

Title 18 U.S.C. §3582.

*a. Exhaustion of Administrative Remedy*

The government contends that Hurst has not exhausted administrative remedies and thus his motion is not properly before this court.  Under § 3582(c)(1(A), as amended by the First Step Act above, the Court may act "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. …" *Id.*

The requirement that an inmate first exhaust his administrative remedies within the BOP is jurisdictional. See *United States v. Garcia*, 606 F.3d 209, 212 & n.5; see also *United States v. Raia,* 954 F.3d 594, 597 (3d Cir. 2020) *United States v. Perez-Serrano*, 2020 WL 2754914(W.D. SD MS) (characterizing defendant's failure to exhaust administrative remedies as "a glaring roadblock foreclosing compassionate release at this point"); *United States v. Eberhart*, 448 F.Supp. 3d 1086, (N.D. Cal. Mar. 25, 2020) (holding, in a case involving a compassionate-release motion based on COVID-19 concerns, "[b]ecause defendant has not satisfied the exhaustion requirement,

the court lacks authority to grant relief under § 3582(c)(1)(A)(i)." *Id.* At the very least, the exhaustion requirement is a mandatory claim-processing rule that must be enforced if, as here, it is invoked by the United States. *Eberhart v. United States*, 546 U.S. 12, 18-19 (2005).

In *Ross v. Blake*, 578 U.S. 1174 (2016), the United States Supreme Court reaffirmed the principle that a district court may not ignore a statutory command such as that included in § 3582(c)(1)(A). The Court there rejected a judicially created "special circumstances" exception to the exhaustion requirement stated in the Prison Litigation Reform Act of 1995 (PLRA). That Act mandates that an inmate exhaust "such administrative remedies as are available" before bringing suit to challenge prison conditions. 42 U.S.C. § 1997e(a). The Court explained that the "mandatory language" of the exhaustion requirement "means a court may not excuse a failure to exhaust" even to accommodate exceptional circumstances, *Id*. at 1856.

The Defendant here, did not file his request to the warden until after he had filed his motion with this court. The only evidence of a request for compassionate release is a letter that Hurst sent to Warden Bartlett on May 13, 2021. [doc. no. 30-2] Hurst had already filed his motion with this court, though, on April 26, 2021. Hurst did not exhaust his administrative remedies. As discussed earlier, such a requirement is jurisdictional.

The requirement that prisoners must first go through administrative remedies allows BOP to evaluate such requests. Arguably BOP is in the best position to do this. See 28 C.F.R. § 571.62(a); BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g).[3] The BOP is uniquely qualified to assess the many challenging factors during this unprecedented pandemic for inmates during the statutorily required 30-day review period. BOP's assessment will be of value to the parties and to the Court.

Hurst did not exhaust his administrative remedies as required by the statute, and this court does

---

[3] Available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

9

not have the authority to grant compassionate release in his case. Additionally, Hurst has not met his burden of proof, as discussed below.

*b. Burden of Proof*

In general, the defendant has the burden to show circumstances meeting the test for compassionate release. *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." United States v. Willis, 2019 WL 2403192, at *3 (D.N.M. June 7, 2019) (citations omitted).

To establish that defendant should be afforded compassionate release, the defendant must show that "extraordinary and compelling circumstances exist." The United States Congress further defined its intent in Title 28 U.S.C. § 994(t) which provides:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

Title 28 U.S.C. § 994(t)

For further guidance, the Sentencing Guidelines policy statement at § 1B1.13 provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

The Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community],

>extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
>>(A) Medical Condition of the Defendant.—
>>>(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>>(ii) The defendant is—
>>>>(I) suffering from a serious physical or medical condition,
>>>>(II) suffering from a serious functional or cognitive impairment, or
>>>>(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>>
>>(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>>
>>(C) Family Circumstances.—
>>>(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>>(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>>
>>(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13.

Hurst lists the following medical conditions that he says will place him at risk for contracting COVID-19: type II diabetes and hypertension, Hurst also states that he contracted and became seriously ill from Covid-19 while he was in state prison. The Government notes that BOP administered the COVID-19 vaccination to defendant Hurst after he entered federal custody. See [doc. no. 33-5].

Hurst says that "the coronavirus has created a[n] 'extraordinary and compelling

11

reason' that warrants a reduction of his sentence." This court is not persuaded. As United States District Court Judge Keith Starrett recently said:

> Preexisting medical conditions that place a defendant at increased risk for serious illness from COVID-19 are not in and of themselves sufficient to establish" grounds for compassionate release. *United States v. McLin*, 2020 WL 3803919, at *3 (S.D. Miss. July 7, 2020). Likewise, "general concerns about possible exposure to COVID-19" are not sufficient. *United States v. Takewell*, 2020 WL 404360 at *4 (W.D. Louisiana July 17, 2020). "[T]he mere existence of COVID-19 in society" and, consequently, the prison system "cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia,* 954 F.3d 594, 597 (3rd Cir. 2020) (citing BOP's COVID-19 Action Plan).

*United States v. Williams,* No. 2:16-CR-10-KS-MTP, 2020 WL 4210476, at *3 (S.D. Miss. July 22, 2020).

This court is required to follow 5th Circuit precedent. See *Guillot v. Unum Provident Corp,* No. 05-0858, 2006 U.S. Dist. LEXIS 94734, at *12 (W.D. La. Nov. 21, 2006). A generalized fear of contracting COVID-19 does not justify compassionate release. *United States v. Brown*, No. 3:18-cr-29-DCB-LRA, 2020 U.S. Dist. LEXIS 109625, at *5 (S.D. Miss. June 23, 2020) (Citing *United States v. Williams,* No. 3:19-00239-01, 2020 U.S. Dist. LEXIS 99374, 2020 WL 3037075, at * (W.D. La. Jun. 5, 2020); *United States v. Veras,* No. 3:19-cr-010, 2020 U.S. Dist. LEXIS 59748, 2020 WL 1675975, at * 6 (M.D. Pa. Apr. 6, 2020); *United States v. Clark,* No. CR 17-85-SDD-RLB, 2020 U.S. Dist. LEXIS 59439, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020)).

As of July 29, 2021, the BOP held 130,484 inmates. BOP already had instituted its own program to address COVID-19 concerns and its effects on the inmate population. For this court to find that COVID presents such an overwhelming circumstance, standing on its own, would defy logic and potentially allow all the inmates currently held in BOP facilities to be returned to the free world. Accordingly, this court does not find that the mere existence of the COVID-19 pandemic, without finding the remaining factors listed in the statute, mandates or allows a

compassionate release. Hurst has not met his burden to show extraordinary and compelling reasons to grant compassionate release.

Hurst is receiving proper medication for his diabetes and has been vaccinated against Covid-19. Moreover, the BOP has taken and is taking extraordinary measures to mitigate the risks of Covid -19, as previously discussed.

*c. Danger to the Community*

Even if this court were to find that Hurst has presented extraordinary and compelling reasons to grant compassionate release, he still has not demonstrated that he "is not a danger to the safety of any other person or to the community, as provided in Title 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2)[4]. Title 18 U.S.C. § 3142(g)[5] requires this court to consider factors such as the nature

---

[4] Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--
   (1)(A) Extraordinary and compelling reasons warrant the reduction; or
      (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
   (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
   (3) The reduction is consistent with this policy statement.
U.S.S.G. 1B1.13

[5] (g) Factors to be considered.--The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
   (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
   (2) the weight of the evidence against the person;
   (3) the history and characteristics of the person, including--
      (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
      (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

and circumstances of the charged offense, the history and characteristics of the defendant, and the nature and seriousness of the danger to any person or the community at large that would be posed by the defendant's release.

The government argues that Hurst's motion should be denied because his motion fails to demonstrate that he is not a danger to the safety of the community. See *United States v. Gonzales,* No. 2:08-318-12, 2018 WL 9372475; *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020). Hurst has an extensive criminal history involving domestic violence, aggravated assault and drug crimes. *United States v. Beaumont,* 759 F.Supp. 339, 340 (E.D. Tex. Jan. 7, 1991) ("Drug offenses are by their nature dangerous to the community."). "Once a defendant has been convicted of a drug offense, that presumption of dangerousness arises." *Beaumont*, 759 F.Supp. at 340.

Hurst was out on bond for a Manslaughter indictment in Hinds County, Mississippi when he was arrested and charged for the instant offenses. In addition, Hurst had a drug indictment pending in Madison County, Mississippi to which he was sentenced to the thirteen (13) years as stated in his motion. [doc. no. 23 p.1].

This Court imposed a sentence that reflected the seriousness of defendant Hurst's underlying offenses which involved posting internet advertisement of a minor for commercial sex acts in hotels. When defendant Hurst was arrested for these charges, he had driven the minor to the hotel and provided the minor with drugs to sell during the commercial sex acts. The safety of

---

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

Title 18 U.S.C. § 3142

the community refers "not only to the mere danger of physical violence but also to the danger that the defendant might engage in criminal activity to the community's detriment." *United States v. Mackie*, 876 F. Supp. 1489, 1491 (E.D. La. 1994).

Moreover, Hurst has only been in federal custody for approximately eighteen months. This Court does not have the benefit of assessing defendant Hurst's behavior in federal custody over time. Hurst has not met his burden to show that he would not be a danger to the community if released.

**III. CONCLUSION**

Accordingly, consistent with the First Step Act, defendant Hurst must first present his request to BOP, permitting it to evaluate his current circumstances considering his coronavirus concerns and diabetes. Defendant Hurst cannot petition this court for judicial relief until, as the statute provides, BOP denies the request or 30 days have passed after presentation of the request to the Warden, whichever is earlier. Because defendant Hurst has not yet exhausted administrative remedies, this Court must deny and dismiss his motion for compassionate release. Additionally, Hurst has not met his burden to show that extraordinary and compelling reasons exist for his release or that he would not present a danger to society if released.

IT IS, THEREFORE, ORDERED that defendant Hurst's Motion for Compassionate Release **[Doc. no. 23]** is hereby DENIED for the reasons stated above.

IT IS FURTHER ORDERED that the following motions are hereby RENDERED MOOT by the issuance of this order: Motions for Extension of Time **[Docket no. 31]** and **[Docket no. 33].**

SO ORDERED this the _____ day of _____, 2021.

_____
UNITED STATES DISTRICT COURT JUDGE